**STATE**

v.

**John PIERCE.**

**No. 95–279–CA.**

Supreme Court of Rhode Island.

Jan. 24, 1997.

Lauren Sandler Zurier, Special Assistant Attorney General, Aaron Weisman, Assistant Attorney General, for Plaintiff.

Janice Weisfeld, Paula Rosin, Assistant Public Defenders, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, John Pierce, from a judgment of conviction on three counts of first-degree child molestation, two counts of first-degree sexual assault, and one count of second-degree sexual assault. On appeal, the defendant contended that the trial justice erroneously admitted into evidence certain expert medical testimony, the victim's written police statement, and testimony regarding the defendant's possession of certain magazines and videotape recordings. The defendant also argued that the trial justice abused his discretion by directing the stenographer to read back to the jury only selected portions of the victim's testimony and by denying the defendant's request for a view of the house where the alleged assaults had occurred. For the reasons stated below, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court on all counts except the second count of first-

degree child molestation. In respect to that count, we vacate the defendant's conviction and grant a new trial. A summary of the facts of this case follows, with additional facts presented in our analysis of the issues raised on appeal.

### Facts and Procedural History

The victim in this case, Ellen,[1] was four years old when her mother, Adele, married defendant. Following the marriage, in July 1981, Adele, Ellen, and Ellen's brother, Neal,[2] moved into defendant's home in East Providence, Rhode Island, where the family lived for nearly eleven years. At trial, Ellen testified that during that time she had a father-daughter relationship with defendant and thought of defendant as her father. Adele testified that during adolescence, Ellen became moody and emotional and would argue with defendant but that Adele trusted defendant and never suspected sexual abuse, instead attributing her daughter's behavior to "adolescent stuff."

On March 25, 1992, Ellen and defendant engaged in a particularly heated argument just prior to Adele's driving Ellen to a babysitting job. Adele testified that her daughter was "near hysterical," and when she asked Ellen whether defendant had "done anything to hurt you," Ellen indicated that defendant had been molesting her "for almost the whole time that we'd been married."

Over the next few days, Adele contacted law-enforcement authorities, and accompanied her daughter to Rhode Island Hospital for a gynecological examination, and on April 2, 1992, Ellen gave a statement to the East Providence police detailing defendant's alleged sexual contact with her.

On October 30, 1992, defendant was charged by indictment with seven counts of sexual assault: three counts of first-degree child molestation, in violation of G.L.1956 §§ 11–37–8.1 and 11–37–8.2 (counts 1, 2, and 7); three counts of first-degree sexual assault, in violation of §§ 11–37–2 and 11–37–3 (counts 3, 4, and 6); and one count of second-degree sexual assault, in violation of §§ 11–37–4 and 11–37–5 (count 5). The first trial

on these charges ended in a mistrial. In the second trial, the trial justice passed the case after defendant objected to an instruction the court gave the jury panel during voir dire.

At the conclusion of the third trial, the trial justice granted defendant's motion for a judgment of acquittal on count 6, and the jury convicted defendant on the remaining six counts. On July 1, 1994, defendant was ordered to serve consecutive sentences of 30 years on each of counts 1, 2, 3, and 7, 10 years on count 4, and 3 years on count 5, for a total of 133 years incarceration. Following sentencing, defendant filed this appeal, pursuant to G.L.1956 § 9–24–32.

### Admission of Expert Medical Testimony

■ At trial, the state presented the expert medical testimony of Bertha Kao, M.D. (Kao), a pediatric resident at Rhode Island Hospital, who performed general physical and pelvic examinations on Ellen. In summarizing the findings of the pelvic examination, Kao described Ellen's hymen as "non-virginal in nature" and opined to a reasonable degree of medical certainty that the size and condition of Ellen's hymenal opening were consistent with multiple instances of penetration by an object such as a penis. Kao also testified in detail about the significance of Ellen's physical reaction to the internal portion of the pelvic examination. She noted that Ellen "tolerated that portion of the exam very well" and then opined to a reasonable degree of medical certainty that Ellen's reaction was significant because "it is consistent with [that of] a patient who has had multiple episodes of penetration to the point where something like an internal pelvic exam is not felt to be invasive by the patient."

The defendant argued on appeal that it was impermissible to allow Kao to testify that Ellen's behavior during the internal examination was consistent with her allegations of having been repeatedly sexually penetrated. We disagree.

1. This is a fictitious name.

2. This is a fictitious name.

In testifying to a reasonable degree of medical certainty about Ellen's physical characteristics and reaction to the internal examination, Kao at no point suggested that Ellen had been penetrated by defendant or that her behavior was consistent with someone who had been sexually assaulted. Therefore, we are of the opinion that Kao's testimony did not serve to bolster Ellen's testimony that defendant had sexually assaulted her. Rather, Kao's testimony was entirely permissible as evidence offered by a qualified expert to help the jury determine whether Ellen had experienced repeated sexual penetration. This case is thus distinguishable from the cases in which this Court has held expert testimony inadmissible because it constituted impermissible vouching for the credibility of the complaining witness. *See, e.g., State v. Haslam,* 663 A.2d 902 (R.I.1995); *State v. Roderigues,* 656 A.2d 192 (R.I.1995); *State v. Tavares,* 590 A.2d 867 (R.I.1991). We hold that in the instant case the trial justice properly admitted this testimony by an expert medical witness because it described the physical characteristics and physical reactions of her patient.

■ At trial, Kao also testified in respect to Ellen's statements concerning the last date of intercourse. The defendant argued that the admission of this testimony impermissibly bolstered Ellen's testimony through the mouth of an expert witness to whose testimony the jury would accord great weight.

Under Rule 803(4) of the Rhode Island Rules of Evidence "[s]tatements made for purposes of medical diagnosis or treatment" are admissible. Prior to the adoption of the Rules of Evidence in 1987, this Court held that the admissibility of statements made by a patient to his or her physician "will hinge on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of [the patient's] ailment." *State v. Contreras,* 105 R.I. 523, 534–35, 253 A.2d 612, 619 (1969). In *State v. Ucero,* 450 A.2d 809 (R.I.1982), we held that a physician's testimony that was told to the doctor by the complaining witnesses and that detailed alleged incidents of sexual assault on two young victims was admissible because it

was pertinent to diagnosis and treatment. The instant case is analogous to *Ucero* because the purpose of the visit to the hospital was to determine whether sexual assault had occurred. Since the adoption of the Rules of Evidence, we held in *State v. Rossier,* 672 A.2d 455, 457 (R.I.1996), that a victim's statement to an examining physician that she had never had a menstrual cycle was admissible because it was relevant to the physician's determination of the cause of the presence of blood.

In the case before us, Kao testified that the timing of the last act of penetration was "significant for several reasons." According to Kao, the latest date of penetration "would determine how I proceeded on the pelvic exam * * * [and] the timing of some of the laboratory tests * * *. It would also help key me into what things I should be looking for on the pelvic exam as well as a physical exam." Because Ellen's statements to Kao were made for the purposes of diagnosis and treatment, they were admissible as an exception to the hearsay rule, pursuant to Rule 803(4).

### Admission of Ellen's Police Statement

■ On appeal, defendant argued that the trial justice erroneously admitted Ellen's written police statement into evidence. The defendant contended that because that statement was made after Ellen had a motive to fabricate allegations against defendant, the statement was not a prior consistent statement and thus was admitted in violation of Rule 801(d)(1)(B) of the Rhode Island Rules of Evidence.

Our review of the record, however, revealed that defendant never specifically objected to the admission of the police statement on the grounds that the statement postdated Ellen's motive to fabricate. Rather, defendant conceded that the police statement contained prior consistent statements that could properly be used to rebut defendant's attack on Ellen's credibility but objected to its admission because the statement contained "extraneous material" and because it "memorialize[d] [Ellen's] testimony," thereby giving the prosecution an "unfair advantage." Because defendant failed to

raise the Rule 801(d)(1)(B) argument at trial, this issue cannot be raised for the first time on appeal. *State v. Long*, 488 A.2d 427, 432 (R.I.1985). We note, however, that the police statement was obviously emphasized as a result of its being sent to the jury, though its admission was not so highly prejudicial as to constitute reversible error.

### Testimony About Defendant's Possession of Adult Magazines and Videos

■ On appeal, defendant argued that the trial justice improperly admitted testimony about defendant's possession of adult magazines and videotape recordings. We have gleaned from the record, however, that defendant failed to raise an objection to such information during the testimony of Ellen, Adele, and Neal. The defendant did object to the testimony of Detective Kenneth Newberg (Newberg) about the depictions in the magazines and the date of the oldest magazine. But defendant failed to state the basis for these objections.

In any event, it is our conclusion that the testimony at issue was relevant and was properly admitted. Ellen's testimony about the magazines and the videotapes helped to establish that defendant was the source of Ellen's knowledge and experience about the sexual acts that she described during her testimony, and the testimony of Adele, Neal, and Newberg corroborated Ellen's version of the events in question. Newberg's testimony on the dates of the magazines was relevant and necessary to establish that the magazines that Ellen testified that defendant had shown to her were in existence during the relevant time frame.

■ The defendant also contended that the trial justice should have limited the state's questioning of defendant concerning the magazines and the videotapes because much of the cross-examination was "merely a guise for the repeated emphasis of this irrelevant yet highly prejudicial information." After careful review of the record, we hold that the state's questioning concerning· the magazines and the videos fell within the scope of direct examination and was relevant to the issue of defendant's credibility.

■ Finally, defendant maintained that the trial justice erred when he instructed the jury that evidence in respect to the magazines and the videotapes could be used as evidence of defendant's plan, scheme, or motive to sexually assault Ellen. We conclude that defendant's arguments are unavailing: our review of the record disclosed that the trial justice properly limited the jury's use of the evidence in question to the grounds set forth in Rule 404(b) of the Rhode Island Rules of Evidence.

### Denial of Defendant's Motion for a View

■ On appeal, defendant argued that the trial justice abused his· discretion in denying defendant's motion for a view of the house in which the alleged sexual assaults occurred. It is well settled that the decision on whether to grant a motion for a view lies within the sound discretion of the trial justice. *State v. Austin*, 462 A.2d 359, 367 (R.I.1983); *State v. Brown*, 549 A.2d 1373, 1379 (R.I.1988). If, in the trial justice's judgment, taking a view is neither helpful nor necessary to assist the jury in understanding the evidence presented at trial, the denial of such a request is "rarely if ever open to question." *Austin*, 462 A.2d at 367 (quoting *DiMaio v. Del Sesto*, 102 R.I. 116, 120, 228 A.2d 861, 863 (1967)).

In denying defendant's request for a view, the trial justice noted that he and a prior jury had viewed defendant's home during the first trial. The trial justice observed that there was "nothing unusual" about the house and that, during the first trial, defendant had not asked "more than one or two questions addressed to the house, none of which required any view to understand." The trial justice therefore concluded that a view "would be of no assistance to the jury * * * in understanding the evidence." On these facts, the trial justice acted clearly within his discretion in denying defendant's motion for a view.

### Rereading Portions of Testimony to Jury

■ During his cross-examination of Ellen, defendant brought out inconsistencies

between her police statement and her grand jury and trial testimony that identified the dates of the first two alleged acts of intercourse. The dates were significant because count 2 of the indictment charged defendant with first-degree child molestation by vaginal intercourse with a person fourteen years of age or younger, in violation of § 11–37–8.1 [3].

During its deliberations, the jury sent the following two questions concerning count 2 to the trial justice:

"The first [question] is 'Count 2, [Ellen's] statement. When did sexual intercourse actually start happening, first time vaginal intercourse?' * * *And the second note is 'Clarification of Count 2. Are we to consider (a) only the period September 1, '89 to June 30, 1990; or (b) up to her 14th birthday, that is, up to March 31, 1991?'"

In response to the jury's second question, the trial justice correctly instructed that the exact dates need not be proven, but that "anything up to until the person turns 14 years of age is relevant with regard to the child molestation count." In response to the jury's first inquiry regarding "[Ellen's] statement," the trial justice had the stenographer read back only certain portions of Ellen's testimony and omitted a rereading of at least part of Ellen's cross-examination in which she testified about the dates of the alleged acts of intercourse. The defendant's counsel specifically objected to the fact that the trial justice did

"not also read to this jury the question or questions * * * when I asked [Ellen] if she had told the police in the police statement that all three instances of vaginal intercourse had taken place within a one-year time period and I believe her response was something to the effect of the years are blurred or something to that effect, Judge."

The trial justice responded that that portion of the testimony had not been read back to the jury because "[Ellen] said her memory was blurred so she wasn't giving any dates, and I didn't want to have the jury rehashing

it." On appeal, defendant argued that the trial justice erred to defendant's detriment by omitting the portion of Ellen's cross-examination in which she admitted that the dates of intercourse had "blurred together."

A decision to read back testimony to the jury in response to a jury's question rests within the sound discretion of the trial justice. State v. Giblin, 568 A.2d 769, 771 (R.I.1990); State v. Dame, 488 A.2d 418 (R.I.1985). In Dame, this Court concluded that the trial justice committed reversible error when he responded to a jury request by summarizing only a witness's direct testimony and omitting crucial cross-examination testimony. 488 A.2d at 424. We held that when a trial justice summarizes evidence in the context of responding to a jury request, the summary must be impartial and must not invade in any way the province of the jury, which is to determine the facts of the case. Id. at 422–23. The same rules apply when a trial justice orders that testimony be read back to the jury.

In the instant case, Ellen's testimony that she was unable to recall dates because they "blurred together" went directly to the question of whether intercourse had occurred before Ellen's fourteenth birthday. Thus, the dates were crucial to the determination of defendant's guilt or innocence on count 2. Moreover, "it is the function of the jury to wrestle with such questions of fact rather than to have the question resolved by the trial justice." Dame, 488 A.2d at 424.

In this case, the proper response to the jury's request would have been a complete and impartial reading of all of Ellen's direct and cross-examination testimony concerning the timing of the alleged acts of sexual intercourse. We hold that the trial justice's omission of arguably crucial portions of testimony constituted prejudicial error requiring a new trial on count 2 only.

In summary, we deny and dismiss the defendant's appeal and affirm the judgment of conviction on counts 1, 3, 4, 5, and 7; we sustain the appeal in respect to count 2, on

---

3. This Court has held that G.L.1956 § 11–37–8.1 is inapplicable to victims after the thirteenth (now fourteenth) anniversary of birth. See, e.g.,

State v. Collins, 543 A.2d 641 (R.I.1988); State v. Jordan, 528 A.2d 731 (R.I.1987).

which we vacate the conviction and grant a new trial.

BOURCIER, J., did not participate.