STATE

v.

Kevin M. LYONS.

No. 96–644–C.A.

Supreme Court of Rhode Island.

Jan. 15, 1999.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the defendant, Kevin M. Lyons, from a judgment of conviction entered in the Superior Court on two counts of first-degree child molestation in violation of G.L.1956 § 11-37-8.1. The trial justice sentenced the defendant to concurrent terms of fifty years' imprisonment on each count, twenty-five to serve and the remainder suspended. We affirm the judgment of conviction. The facts insofar as pertinent to this appeal are as follows.

Around the age of seven or eight, the victim, Julie [1], together with her mother, her brother and her mother's boyfriend—the defendant, moved into a house in Warwick, Rhode Island. Soon thereafter, defendant assumed the role of father figure and became a strict disciplinarian to the children. They resided together for approximately one and one-half years, until defendant and Julie's mother ended their relationship. Consequently, defendant moved out of the Warwick home. It is during the period of cohabitation when the acts at issue took place.

At trial, Julie testified that during the time defendant resided in the Warwick home, he repeatedly sexually molested her. Under the guise of parental discipline, defendant would punish Julie for "wearing lipstick" or other "little things." In order to be "unpunished," defendant would call Julie to his room and force her either to perform fellatio or engage in sexual intercourse with him. The defendant threatened retaliation against Julie if she ever told anyone about his illicit activities.

The defendant testified in his own defense and denied that he ever molested Julie. A jury found defendant guilty on both counts of the indictment. A judgment of conviction entered after the trial justice denied defendant's motion for new trial. This appeal

Annie Goldberg, Aaron L. Weisman, Lauren Sandler Zurier, Providence, for plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for defendant.

---

1. The name of the complaining witness has been changed to protect her identity.

followed. In support of his appeal, defendant raises three issues that will be considered in the order in which they appear in defendant's brief. Additional facts will be supplied as necessary to treat specific issues.

## Admission of Prior Consistent Statements

On appeal, defendant argues that the trial justice erroneously allowed the testimony of Julie's aunt and cousin into evidence. During the prosecution's case-in-chief, Julie's cousin testified that Julie disclosed defendant's acts of sexual molestation to her. Julie's aunt then testified about a conversation she had with her daughter, Julie's cousin, regarding the same acts of sexual molestation. The defendant contends that since Julie's statements were made after she had a motive to fabricate allegations against defendant, the statement does not qualify as a prior consistent statement and is therefore in violation of Rule 801(d)(1)(B) of the Rhode Island Rules of Evidence. *See State v. Haslam*, 663 A.2d 902, 908–09 (R.I.1995).

■ "It is well settled that this [C]ourt will not review issues that were not preserved for appeal by a specific objection at trial." *State v. Pineda*, 712 A.2d 858, 861 (R.I.1998). According to the "'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" *State v. Toole*, 640 A.2d 965, 972–73 (R.I.1994) (quoting *State v. Warren*, 624 A.2d 841, 842 (R.I. 1993)). "Consequently, allegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." 640 A.2d at 973 (citing *State v. Burke*, 529 A.2d 621, 627 (R.I.1987)).

Recently, we addressed the issue of failing to object to a prior consistent statement on the basis that the victim made the statement after the motive to fabricate arose. In *State v. Pierce*, 689 A.2d 1030 (R.I.1997), Pierce, appealing a conviction for child molestation, argued that the trial justice erroneously admitted a police statement made by the victim. *Id.* at 1033. Pierce contended that because the victim made the statement after the victim had a motive to fabricate allegations against him, the statement did not qualify as a prior consistent statement within the meaning of Rule 801(d)(1)(B). 689 A.2d at 1033. A review of the record, however, revealed that Pierce never specifically objected to the admission of the police statement on the grounds that the statement postdated the victim's motive to fabricate. *Id.* Rather, Pierce conceded that the police statement contained prior consistent statements that could be used properly to rebut the defendant's attack on the victim's credibility, but objected to its admission because it contained "extraneous material" and "memorialize[d] [the victim's] testimony." *Id.* Since Pierce failed to raise the Rule 801(d)(1)(B) argument at trial, this Court held that the issue could not be raised for the first time on appeal. 689 A.2d at 1033–34 (citing *State v. Long*, 488 A.2d 427, 432 (R.I.1985)).

■ Likewise, in the case before us, a review of the record reveals that defendant never specifically objected to the testimony of Julie's aunt and cousin on the basis that the statements postdated Julie's motive to fabricate. Rather, defendant conceded that the testimony constituted prior consistent statements that could be used appropriately "if, in fact, the defendant calls into question or suggests recent fabrication or some other reason" but objected on the ground that there existed "no basis *** for the presentation of prior consistent statements." It is our conclusion that the raising of this issue on appeal is the product of post-verdict attention as opposed to pretrial preparation. *Pineda*, 712 A.2d at 861. Therefore, appellate review of this issue is inappropriate.[2]

---

2. Even if this issue were properly preserved at the trial level, defendant would not prevail on his claim of error. The defendant contends that Julie's statements to her cousin were part of a preexisting plan to "get even" with him. The defendant points this Court to the cross-examination of Julie's mother, in which the following colloquy took place:

"Q: Now, at some point, [Julie] told you she hated [defendant], didn't she?
"A: Yes.
"Q: And she even told you she was going to get even with him, didn't she?
"A: Yes.
"Q: Did you know what she meant?

## Admission of Expert Medical Testimony Regarding Results of Physical Examination

The defendant next assigns error to the trial justice's admission of testimony by a nurse-practitioner regarding the results of a physical examination conducted upon Julie. At trial, the prosecution called a nurse-practitioner, who had examined Julie for sexual abuse, to testify to her findings. The defendant objected to this witness on the ground that an insufficient foundation existed to link temporally the physical findings to the allegations in the indictment and, therefore, the testimony would not be helpful to the jury. The defendant argues on appeal that the trial justice abused her discretion in permitting this testimony.

 "[I]n this jurisdiction the admission of expert testimony lies in the sound discretion of the trial justice. *State v. Bryant*, 670 A.2d 776, 781 (R.I.1996) (citing *State v. Capalbo*, 433 A.2d 242, 246 (R.I.1981); *Leahey v. State*, 121 R.I. 200, 202, 397 A.2d 509, 510 (1979)). Rule 702 of the Rhode Island Rules of Evidence sets the criteria for admission of expert testimony as follows:

> "**Testimony by experts.**—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

As a rule of thumb, expert testimony should be permitted on nearly every subject so long as it is beyond the understanding of laypersons of ordinary intelligence. *Bryant*, 670 A.2d at 782.

 A review of the record indicates that the trial justice did not abuse her discretion

"A: No.
"Q: When did she tell you that she was going to get even with [defendant]?
"A: When he started coming around."
Reference to the record, however, reveals that this testimony referred to a time period *after* Julie disclosed defendant's acts of sexual molestation to her cousin, not to a time period that pre-dated Julie's disclosure. After Julie's mother suspended her relationship with defendant, Julie and her family moved to her grandmother's

in admitting the testimony. The nurse-practitioner testified that based on the medical findings she observed, coupled with Julie's history and disclosure, Julie had been penetrated. The nurse-practitioner limited her testimony to the field of her expertise, namely sexual abuse, and certainly provided assistance to the jury in determining whether such abuse occurred, a matter well outside of the common ken. *Bryant*, 670 A.2d at 782 (citing *State v. Chiellini*, 557 A.2d 1195, 1201 (R.I.1989), *overruled on other grounds, State v. Werner*, 615 A.2d 1010, 1012 (R.I.1992); *State v. Usenia*, 599 A.2d 1026, 1033 (R.I. 1991)). Although the nurse-practitioner could not determine when penetration had occurred, defendant vigorously tested her opinion via cross-examination and even offered his own medical expert to rebut the prosecution. As the trial justice properly concluded, the crux of defendant's objection went to the weight of the testimony, not to its admissibility. Our review of the record discloses no abuse of discretion on the part of the trial justice.

## Admission of Alleged Bolstering Testimony

The defendant's final claim of error is that the trial justice improperly permitted testimony that bolstered Julie's testimony and resulted in undue prejudice to defendant. The defendant directs our attention to three instances. First, defendant contends that the nurse-practitioner impermissibly offered an opinion concerning the truthfulness of Julie's allegations. Second, defendant contends that the nurse-practitioner impermissibly testified that Julie identified defendant as the perpetrator. Last, defendant contends that the nurse-practitioner impermissibly vouched for Julie's credibility. We shall address each contention in turn.

home in East Providence, Rhode Island. While living at her grandmother's home, Julie revealed the sexual molestation to her cousin. Thereafter, Julie and her family moved to Pawtucket, Rhode Island. Once defendant "started coming around" their home in Pawtucket, Julie told her mother "she hated [him]" and "was going to get even with him." Accordingly, the timing of the statements at issue do not support defendant's contention that Julie's statements were made after she had a motive to fabricate.

## A. Opinion Concerning the Truthfulness of Julie's Allegations

The defendant argues that the trial justice erred in permitting an opinion offered by the nurse-practitioner concerning the truthfulness of Julie's allegations. During cross-examination of the nurse-practitioner, defendant's counsel elicited the following testimony before the jury:

"Q: And you take what the patient tells you at face value, that is, you accept it as true?

"A: Children telling me the things they tell me around this issue—

"Q: Yes.

"A: In my experience, *very rarely are children making up these stories.*

"Q: I'm not asking you whether you think they're making up stories. My question is for purpose of your diagnosis, you accept it as true?

"A: I do." (Emphasis added.)

■ We have held that "when counsel goes fishing on cross-examination, [counsel] cannot assume that in playing with fire, [counsel] will not get burned." *State v. Ferrara*, 571 A.2d 16, 19 (R.I.1990) (quoting *State v. Edwards*, 478 A.2d 972, 975 (R.I. 1984)). Obviously, the response given by the witness is not the response which defense counsel hoped to achieve. However, defense counsel so broadly worded the question that the witness' reply simply responded to the question asked. *See* 571 A.2d at 19. Defense counsel made no motion to strike the response nor requested any cautionary instruction. Accordingly, the trial justice committed no error.

## B. Identification of Defendant

The defendant next argues that the trial justice erred in permitting the nurse-practitioner to testify that Julie identified defendant as the perpetrator. Outside the presence of the jury, counsel for defendant objected to the testimony of the nurse-practitioner on the ground of repetition by the prosecution's witnesses, notably Julie's cousin and aunt. The defendant argued that by permitting the testimony of the nurse-practitioner, it would be "the third

and possibly the fourth time the jury [would hear] the complaining witness' version of events." In the course of the colloquy, the prosecutor indicated that the testimony would be proper since defendant made an issue of identification. At this point, defendant stated that he thought the testimony should be limited to medical diagnosis, not to physical observations unrelated to the victim's history. The trial justice then asked if the prosecutor intended to concentrate on that issue, seemingly referring to medical diagnosis. When the prosecutor responded in the affirmative, the trial justice overruled defendant's objection.

Thereafter, during direct examination by the prosecution, the nurse-practitioner, when asked to relate the nature of Julie's complaint, nonresponsively supplied defendant's name as the alleged perpetrator. That reply, however, incorrectly identified the alleged perpetrator as "Kenneth Lyons." The defendant offered no objection. To clarify the mistake, the prosecution asked if that name was consistent with the name Julie had supplied. The nurse-practitioner, realizing her mistake, corrected herself and identified the alleged perpetrator as "Kevin" Lyons. Again, defendant offered no objection.

■ At most, the trial justice made an equivocal ruling. We agree that it would have been improper to allow the nurse-practitioner to repeat the name of the alleged perpetrator. Such information would not be relevant to either treatment or diagnosis. *See Haslam*, 663 A.2d at 909; *State v. Castore*, 435 A.2d 321, 326 (R.I.1981). However, the prosecutor did not ask the nurse-practitioner to identify the perpetrator. The nurse-practitioner merely responded to a general question relating to the nature of Julie's complaint. Although her naming the perpetrator was not responsive to the question as propounded, at neither juncture did defendant object or move to strike. We are of the opinion that the equivocal ruling of the trial justice did not preclude defendant from objecting or moving to strike when the nurse-practitioner volunteered defendant's name, nor when the prosecutor asked her to correct the name. Given the totality of the

circumstances, the issue is not preserved for appeal.

### C. Alleged Vouching for Julie's Credibility

Last, defendant argues that the trial justice erred in permitting testimony which allegedly vouched for Julie's credibility. During direct examination, the prosecutor asked the nurse-practitioner if she formed an opinion to a reasonable degree of medical certainty as to whether or not her findings were consistent with penetration. The nurse-practitioner responded that "[b]ased on the child's disclosure, her history she gave me, and the medical findings that I saw, I believe the child was penetrated."

■ Upon review of the record, however, it appears, once again, that defendant failed to object specifically to this testimony at the trial level; nor did defendant move to strike the answer, nor request any cautionary instruction, nor request a mistrial. As such, again for the reasons discussed *supra,* the issue is not preserved for appellate review and therefore is waived. *See Toole,* 640 A.2d at 972–73.

■ Regardless of waiver, if defendant properly had preserved this issue for appellate review, it does not appear that he would prevail. Ordinarily, a witness should not be permitted to offer an opinion concerning the truthfulness of the testimony of another witness, and his or her testimony will be inadmissible if it literally addresses credibility or. has the same "substantive import." *Haslam,* 663 A.2d at 905. However, in order to determine whether the testimony "would be perceived by the jury as a conclusive opinion" on a complainant's credibility, *id.* at 906, a "reviewing court must consider the offending statements in the context of the witness's overall testimony before the jury." *State v. Brown,* 709 A.2d 465, 479 (R.I.1998). A reviewing court should not select one isolated statement in a witness's testimony without considering the testimony as a whole. *Id.* at 481.

Here, the defendant places much emphasis on the nurse-practitioner's statement that she "believe[d] the child was penetrated."

But a close review of the context of her testimony reveals that the defendant's argument is based more in semantics than substance. The prosecution asked the nurse-practitioner a litany of detailed questions concerning her medical findings, including questions pertaining to the process in which she conducted the examination, the abnormal appearance of the hymen, and the presence of labial adhesions. Nothing in this testimony, taken as a whole, expresses any opinion at all about Julie's credibility. Rather, the nurse-practitioner simply gave her medical opinion, permissible under Rule 803(4) of the Rhode Island Rules of Evidence, concerning whether in fact her findings were consistent with penetration. Assuming the defendant had preserved the issue for appellate review, the nurse-practitioner's testimony would not rise to the level of vouching.

### Conclusion

For these reasons, the defendant's appeal is denied, and the judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.