STATE

v.

**Robert J. MARR.**

No. 98–405–C.A.

Supreme Court of Rhode Island.

June 2, 1999.

Aaron L. Weisman, Providence, for plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

After a nonjury trial, the Superior Court convicted the defendant, Robert J. Marr, on two counts of first-degree child molestation and one count of second-degree child molestation. On appeal,[1] the defendant argues that in rendering her judgment, the trial justice erroneously relied upon inadmissible hearsay and upon evi-

dence tending to bolster the credibility of the child-victim witness. Consequently, he asks this Court to vacate the convictions and grant him a new trial. Because we do not agree that the defendant's arguments warrant such relief, we deny and dismiss his appeal and affirm the Superior Court judgment.

### Facts and Travel

To protect the identities of the child victim and his family, we shall use fictitious names in referring to these witnesses. Donna Smith (mother) gave birth to Christopher Smith (Christopher) on September 29, 1989, about the same time as the mother's relationship with Christopher's father ended. The mother named defendant, a longtime acquaintance and co-worker of hers, as Christopher's godfather. After his birth, Christopher lived in East Greenwich with his mother and his grandmother. The mother told defendant that if she and Christopher's grandmother died, then defendant should assume Christopher's legal guardianship. When Christopher reached approximately one year of age, defendant began to take him to various places, including McDonald's Restaurant, the Discovery Zone Funcenter in East Greenwich, and the park. Eventually, with his mother's approval, Christopher came to refer to defendant as Uncle Bob.

On September 12, 1993, at approximately 4:30 p.m., defendant picked up Christopher at his East Greenwich home for an outing to the Discovery Zone. Christopher, who was not quite four-years old at this time and who was six-years old at the time of the trial, testified that they spent some time there before defendant drove with him to an area that he described as the "bushes" or "woods." There, defendant proceeded to carry him out of his automo-

---

1. This is the second appeal that we have considered in this case. In 1996, we reversed a Superior Court ruling that the child-victim witness was incompetent to testify. *See State v. Marr*, 673 A.2d 452 (R.I.1996) (*Marr I*) (holding that the child-victim witness pos-

sessed a sufficient ability to observe, recollect, and communicate to satisfy the minimal standards of witness competence). The nonjury trial and subsequent conviction of defendant occurred after our remand in *Marr I*.

bile into the surrounding vegetation. Among the bushes and trees, defendant performed fellatio on Christopher and ordered Christopher to perform fellatio on him. The defendant then drove Christopher to McDonald's, where defendant telephoned the mother and told her that Christopher had a headache. After the mother heard Christopher crying in the background that he wanted to return home, she demanded to speak with him. Before giving Christopher the phone, defendant, according to Christopher's testimony, repeatedly commanded him to tell his mother that he had a headache. The mother spoke briefly with Christopher, who told her that he wanted to go home. The mother then ordered defendant to bring Christopher home.

When the two arrived at the mother's home, Christopher would not permit defendant to take him out of the car. Claiming that his feelings had been hurt, Christopher wrapped himself around his mother, who then brought him into the house and up to his grandmother's second-story room. Upon returning downstairs, the mother asked defendant to leave, but defendant refused to do so without seeing Christopher. The mother told him that she was going to check on Christopher, who was with his grandmother, and then return downstairs. Before she could return, however, defendant proceeded upstairs on his own initiative, brushed by the mother, and knelt down next to Christopher, where he whispered something in the child's ear that was inaudible to either his mother or grandmother.[2] The defendant then left immediately. When the mother queried Christopher about his distress, he refused to answer, indicating only that he wanted to be alone with his grandmother. Christopher's grandmother then comforted him, and he ultimately told her about defendant's sexual assaults upon him earlier that day. He also told her about a separate, previous incident involving anal intercourse in defendant's basement. The next evening, September 13, with his grandmother's support, Christopher recited defendant's acts to his mother, who in turn reported the incidents to the Warwick Police Department.

Nine days later, on September 22, Michael Bousquet (Bousquet), an investigator for the Department of Children, Youth, and Families (DCYF), interviewed Christopher at the Warwick police station about the alleged molestation and the surrounding events. Bousquet testified that Christopher told him in that interview that defendant had performed fellatio on him and had engaged in anal intercourse with Christopher; that defendant had ordered Christopher to perform fellatio on him; and that defendant had cut Christopher with a knife (a claim Christopher later recanted). Later that same day, Bousquet separately interviewed defendant about these same alleged events, and defendant denied their occurrence. Two days thereafter, on September 24, Christopher's mother brought him to his pediatrician, Dr. Frank LaFazia (Dr. LaFazia), for a physical examination. Doctor LaFazia testified that Christopher recounted to him "some pretty graphic testimony" about the molestation. Doctor LaFazia also stated, however, that other than some perirectal redness which may or may not have indicated anal penetration, he observed no other signs of penetration; that is, he saw no abrasions, tears, swelling, lesions, or blunt trauma around the anal area. Finally, he stated, "[t]he only thing that was suspi-

---

2. Although the record does not disclose exactly what defendant whispered to Christopher, his grandmother testified that after "[defendant] came in, * * * he bent down and whispered something to [Christopher], and [Christopher] froze, and he just wouldn't—he wouldn't stop screaming, he got very still, and he just dug his head in, and he wouldn't go near his mother." Christopher, however, did testify that defendant previously had told him not to report the incidents of sexual molestation to his mother or his grandmother, threatening "[i]f you tell, I will chop up your grandma and your mom and bury them in the sand."

cious in the rectal examination was how easy it was to perform," indicating to him that perhaps Christopher previously had been subject to anal intrusion.

At the trial, defendant denied sexually molesting Christopher. Nonetheless, after hearing all the evidence, the trial justice adjudged him guilty of two counts of first-degree child molestation and one count of second-degree child molestation, and sentenced him to thirty-years imprisonment: fifteen to serve and fifteen suspended. The defendant now appeals his convictions to this Court, claiming that the trial justice erroneously admitted the hearsay testimony of the mother, Bousquet, and Dr. LaFazia concerning what Christopher told them had happened to him, and that the testimony of those three witnesses improperly bolstered Christopher's testimony.

### Analysis

■ First, defendant argues that the trial justice erroneously admitted the mother's hearsay testimony as a prior consistent statement of Christopher's charges of sexual molestation. Although the state concedes that the admission of this evidence was error, it contends that this error was harmless in light of all the other inculpatory evidence that it properly submitted to the trial justice, and thus, this error does not warrant reversal. We agree. Rule 801(d)(1)(B) of the Rhode Island Rules of Evidence provides that "[a] statement is not hearsay if * * * [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Here, the mother's testimony concerning what Christopher told her was consistent with Christopher's in-court account of defendant's sexual molestation. As the state concedes, however, it did not offer the mother's testimony about what Christopher told her to rebut a defense charge that Christopher recently fabricat-

ed his story or that his in-court testimony was the product of any improper influence or motive. Thus, the trial justice did indeed err in admitting the mother's testimony about what Christopher related to her as a prior consistent statement.

■ Nonetheless, given the existence of other inculpatory evidence—particularly the testimony of both Christopher and his grandmother—we deem such error to have been harmless beyond a reasonable doubt because the Superior Court's decision did not even refer to the mother's testimony in explaining why defendant was guilty of the charged offenses. Rather, in rendering her decision, the trial justice relied almost entirely on the properly admitted testimony of both Christopher and his grandmother concerning defendant's acts of sexual molestation. Consequently, the trial justice's error in also allowing the mother to testify about these events did not so infect her decision to convict defendant that it caused him to suffer the type and degree of prejudice which would trigger a reversal on appeal. *See Roberts v. Communications Investment Club of Woonsocket,* 431 A.2d 1206, 1210 (R.I.1981) (holding that when a trial justice errs with regard to the admissibility of evidence, the error is harmless unless it so influenced the trial justice's judgment that he or she rested the decision in whole or in substantial part on that evidence).

■ Next, defendant claims that the trial justice erred in admitting the hearsay testimony of both Bousquet and Dr. LaFazia concerning what Christopher had told them about defendant's sexual assaults. The state counters by arguing that defendant waived any objection to this evidence when his counsel failed to object properly to its admissibility at trial. Recently, we once again applied our long-standing raise-or-waive rule in *State v. Lyons,* 725 A.2d 271, 273 (R.I.1999). There, we stated that "issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to

the basis for said objection, may not be considered on appeal,' * * * [and] are considered waived." *Id.* (quoting *State v. Toole,* 640 A.2d 965, 972–73 (R.I.1994)); *see also State v. Brown,* 709 A.2d 465, 477 (R.I.1998).

Here, Bousquet, when testifying for the state on direct examination, briefly discussed his employment as a DCYF child-protector investigator. Thereafter, the following exchange took place:

> "[**Prosecutor:**] Okay. And I want to direct your attention back to September of 1993. Did you have occasion to become involved in a case involving a then four-year old [*sic* ] boy named [Christopher]?
>
> "[**Bousquet:**] Yes.
>
> "[**Defense Counsel**]: Objection, Your Honor, to any further testimony from this witness.
>
> "**The Court:** Its all right. Overruled.
>
> "[**Defense Counsel**]: Overruled, Your Honor?
>
> "**The Court:** Yes."

Bousquet proceeded to answer the prosecutor's succeeding questions—forty-three in all—regarding, inter alia, what Christopher told him during their September 22, 1993 interview; to wit, that defendant performed fellatio on Christopher and ordered him to reciprocate; that defendant engaged in anal sex with Christopher in defendant's basement; and that defendant cut Christopher with a knife (a claim Christopher later recanted). All of this testimony came into evidence without any objection from defense counsel, much less a specific objection that would have alerted the trial justice to the grounds on which defense counsel based the objection. Under these circumstances, defendant's sole, general objection at the outset of Bousquet's testimony to the court's receiving "any" further testimony from Bousquet—when defense counsel presumably intended to raise a hearsay objection and preserve it for any eventual appeal—does not constitute compliance with the raise-or-waive rule. Such a general objection utterly failed to apprise the trial justice of any specific reason for precluding Bousquet's testimony. Furthermore, defense counsel failed to lodge a single objection—on the grounds of hearsay, bolstering, or otherwise—to any of the more specific questions that the prosecutor subsequently asked during Bousquet's testimony; nor did he move to strike any of the witness's answers to the questions that were asked; nor did he request any cautionary instruction, nor request a mistrial. Therefore, defendant did not preserve the hearsay argument with respect to Bousquet's testimony that he wishes this Court to consider on appeal.

 Next, defendant argues that the trial justice also should not have admitted Dr. LaFazia's testimony into evidence. The main thrust of Dr. LaFazia's testimony was to reiterate Christopher's story as related to him by Christopher and his mother and to demonstrate that Christopher did not exhibit any discomfort during Dr. LaFazia's rectal examination (which, to Dr. LaFazia, was potentially indicative of previous sexual abuse). Here again, however, defense counsel failed to preserve this objection for appeal. During Dr. LaFazia's testimony, defense counsel raised but one objection, which similarly occurred at the initiation of the prosecutor's witness examination, as follows:

> "[**Prosecutor:**] [D]id you have occasion, Doctor, to become involved in an examination of [Christopher] in September of 1993?
>
> "[**LaFazia:**] Unfortunately, yes, I did.
>
> "[**Prosecutor:**] And can you tell me what your understanding of the circumstances were[?]
>
> "[**LaFazia:**] I was—originally, the mother of the patient came in and stated that—
>
> "[**Defense Counsel**]: Objection, Your Honor.
>
> "**The Court:** Overruled. You may answer, Doctor."

Such an objection to any testimony concerning what the mother may have stated to Dr. LaFazia about Christopher could not plausibly have placed the trial justice on notice that defense counsel also intended to object to Dr. LaFazia's subsequent testimony about what Christopher told him and to Dr. LaFazia's later statement concerning Christopher's lack of discomfort in being subjected to the rectal examination.[3] Here, once again, defense counsel did not raise any objections whatsoever during the remainder of Dr. LaFazia's testimony. As a result, defendant waived his claimed errors regarding the admission of Dr. LaFazia's testimony.

Collaterally, we note that even if defendant had properly preserved these respective arguments concerning the hearsay testimony of both Dr. LaFazia and Bousquet, and even if, arguendo, the admission of such evidence had been erroneous,[4] any error in this regard was harmless. As previously stated, any error in the admissibility of evidence is harmless unless the trial court rests its decision in whole or in substantial part on such inadmissible evidence. *See Roberts,* 431 A.2d at 1210. But here, the trial justice's decision merely mentions Bousquet and Dr. LaFazia in passing, commenting only that they testified "that [Christopher] had reported a consistent narrative concerning the sexual activity alleged." The heart of the trial justice's rationale for convicting defendant was her belief, after listening to the child's testimony, that: "it [is] inconceivable that a child of this age with [Christopher]'s deportment could ever create the scenario of criminal activity which was the subject matter of this trial. [Christopher]'s testimony, in my mind, was

too graphic, too detailed, and too unwavering to be the product of fiction or imagination." As even defense counsel conceded in his closing argument before the Superior Court, the "[state's] whole case is based on the testimony of [Christopher]." Thus, any erroneously admitted testimony from Dr. LaFazia and Bousquet was merely cumulative, as evidenced by the fact that, in rendering her decision, the trial justice relied upon substantially the same factual account as she obtained from Christopher's direct testimony. This evidence also was corroborated by what Christopher told his grandmother, and both of these witnesses testified without objection and were subject to cross-examination. *See Roberts,* 431 A.2d at 1210 (reasoning that any error was harmless, as the purported erroneously admitted testimony ultimately was placed before the trial justice through other non-objectionable evidence). *See also generally* 2 Michael H. Graham, *Handbook of Federal Evidence* § 801.12 at 273 (4th ed.1996) (stating that although the topic of prior consistent statements is an "extremely complex subject * * * [t]he fortunate aspect is * * * that since the prior consistent statement is by its very nature consistent with in court testimony of the witness, introduction of reversible error through misinterpretation [of Fed. R.Evid. 801(d)(1)(B) ] is very unlikely").

Finally, with respect to the defendant's bolstering arguments, we are unable to discover any instance in the respective testimonies of the mother, Dr. LaFazia, or Bousquet when any of them *vouched* for Christopher's credibility or "offer[ed] an opinion concerning the truthfulness of [his] testimony." *Lyons,* 725 A.2d at 276.

3. Potentially, defense counsel's objection could serve to preserve an argument as to the statements made by the mother to Dr. LaFazia about Christopher's condition. Even so, this argument, although preserved, would lack merit, as these statements were admissible under the exception to the hearsay rule for statements made for the purpose of medical diagnosis or treatment. *See* R.I. R. Evid. 803(4).

4. Even this assumption is tenuous at best because defendant's specific hearsay argument with respect to Bousquet—that the trial justice erred in allowing Bousquet to testify from the report of his interview with Christopher—is belied by the fact that defendant himself introduced this report into evidence as a full exhibit, thereby undercutting any possible hearsay objection to its admissibility.

Moreover, defense counsel's relative dearth of objections during the testimony of these three witnesses further confounds us in this search. See *id.*; *see also Brown,* 709 A.2d at 479 (holding that testimony constitutes impermissible bolstering only when the witness "attempt[s] to vouch for the credibility of another witness"); *State v. Miller,* 679 A.2d 867, 872–73 (R.I.1996) (same); *State v. Haslam,* 663 A.2d 902, 905 (R.I.1995) (same). Thus, the defendant's arguments in this regard, even if he had preserved them (he did not), lack merit.

### Conclusion

In sum, we conclude that the admission of the hearsay evidence testified to by the mother, Bousquet, and Dr. LaFazia was harmless, that the defendant's objections to the testimony of the latter two witnesses were not preserved in any event, and that no indication of bolstering exists in the testimony of these three witnesses, nor was any such objection preserved for appeal. For these reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court.