July 3, 2025

**Supreme Court**

No. 2024-14-C.A.
(P1/20-1021A)


State                              :

    v.                             :

Jose Lantigua.                     :


NOTICE:   This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email opinionanalyst@courts.ri.gov, of any typographical
or other formal errors in order that corrections may be
made before the opinion is published.

State                          :

v.                          :

Jose Lantigua.                          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Robinson, for the Court.**  The defendant, Jose Lantigua, appeals from a November 22, 2023 judgment of conviction and commitment on one count of first-degree child molestation and one count of second-degree child molestation following a jury trial held in the Providence County Superior Court.  On appeal, the defendant contends that the trial justice erred in allowing a medical expert to "impermissibly bolster" the complaining witness's testimony that she had been sexually abused even though the medical expert's opinion "was based only on statements from [the complaining witness] and her mother, and not due to any medical or physical findings."

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

This case involves allegations of child molestation made by the complaining witness against defendant.

On March 12, 2020, a grand jury indicted defendant on one count of first-degree child molestation (Count 1) and two counts of second-degree child molestation (Count 2 and Count 3). On September 28, 2022, defendant was convicted by a jury on the count of first-degree child molestation and on one of the two counts of second-degree child molestation.[1] Later, on October 30, 2023, defendant was sentenced to a sixty-year sentence, with twenty-five years to be served, on the count of first-degree child molestation. On the second-degree child molestation count, defendant received a concurrent sentence of twenty-five years. A notice of appeal was filed on November 16, 2023. We relate below the salient aspects of the pretrial hearing and of the trial itself.

## A

## The Motion *in Limine* to Allow the Testimony of Doctor Amy Goldberg

On August 26, 2022, the state filed a motion *in limine* to allow Amy Goldberg, M.D., to testify as to statements that the complaining witness and her mother, Luisa

---

[1] As will be discussed *infra*, the trial justice granted defendant's motion for judgment of acquittal on one of the two counts of second-degree child molestation (Count 3).

Mora, made to Dr. Goldberg in the course of her medical examination of the complaining witness at the Aubin Center of the Hasbro Children's Hospital. The state asserted that those statements were admissible pursuant to Rule 803(4) of the Rhode Island Rules of Evidence since the proffered statements were made to Dr. Goldberg for the purpose of medical diagnosis and treatment. A hearing on the state's motion was held on September 15, 2022, but the trial justice made no decision at that time.

In the course of trial, the trial justice readdressed the issue raised by the motion *in limine* and provided the parties another opportunity to present arguments. Counsel for defendant contended that Dr. Goldberg was being "called to bolster the testimony of the witnesses." In response, the state asserted that the "only thing she's going to say is that * * * the disclosure that [the complaining witness] gave was consistent with child sexual abuse. She can't say whether or not this child was sexually abused." In ruling on the motion, the trial justice indicated that, while he was going to "wait to see what the doctor will actually testify to," the medical reports prepared by Dr. Goldberg would not be admitted into evidence. The trial justice further ruled that (1) an allegation that defendant abused a child other than the complaining witness would not be admissible; (2) the history of sexual abuse given by the complaining witness to Dr. Goldberg would be admissible; and (3) the findings from the physical examination would be admissible. The trial justice

- 3 -

ultimately ruled that Dr. Goldberg would be permitted to testify and would be subject to cross-examination.

## B

## The Trial

There follows the testimony of those witnesses whose testimony we deem relevant to our resolution of the issues on appeal.

### 1. The Testimony of Luisa Mora

Ms. Mora first testified to the following: she is the mother of the complaining witness; her own mother is Dulce Lantigua; and defendant is her stepfather. Ms. Mora testified that, when the complaining witness was a "few months old," she (i.e., Ms. Mora) moved into a house located at 44 Alton Street in Providence, where her mother and defendant then resided. She stated that the house was a two-story building with two bedrooms and a bathroom on the first floor as well as three more bedrooms and a bathroom on the second floor. The house also had a basement, where defendant stored tools. Ms. Mora added that, when the complaining witness was an infant, she and her daughter slept in the same room on the second floor.

Ms. Mora testified that, at some point when her daughter was still a child, she moved out of the 44 Alton Street house to move in with her husband, Yonathan Jimenez. She added that her daughter remained at the 44 Alton Street house with defendant and Ms. Lantigua (Ms. Mora's mother). It was Ms. Mora's testimony

that, while her daughter was still living at the 44 Alton Street house, defendant had moved out of the house and married someone other than Ms. Lantigua. However, Ms. Mora further stated that defendant at some point returned to live at the 44 Alton Street house.

Ms. Mora next testified as to certain events that occurred in April of 2019. She stated that, while driving with her brother, her husband, and her children, they began talking about defendant. Ms. Mora testified that, in the course of the conversation, her daughter spoke from the back seat of the car and stated that defendant used to touch her and that it "was a game that she used to play with" him. It was her further testimony that, upon being apprised of this information, they returned to the 44 Alton Street house to confront defendant regarding what they had just been told by the complaining witness.

Ms. Mora stated that she did not report the alleged abuse to the police. She testified that, after the alleged abuse had been disclosed, she noticed that her daughter, the complaining witness, refused to eat, had nightmares, did not want to bathe, and started bed-wetting. Ms. Mora added that, in May of 2019, she received a call from her daughter's school principal, who informed her that her daughter had been "cutting herself and that she had suicidal thoughts." It was Ms. Mora's testimony that, after receiving that phone call, she sought counseling for her daughter and also went to the police department to report the alleged abuse; she added that

they went to the Aubin Center at the Hasbro Children's Hospital.  Ms. Mora testified that, while her daughter was being seen at the Aubin Center, she informed the doctors that defendant had been touching her daughter's "private parts."

## 2.  The Testimony of the Complaining Witness

The complaining witness testified that defendant is her step-grandfather and that, when she was growing up, she would call him "Daddy."  She described several instances of molestation in the course of her testimony.

The complaining witness first testified to an alleged occurrence that took place when she was four-years-old.  She stated that defendant had informed her that "there was a Barbie house in the basement" and that he asked her "to go downstairs to the basement with him to help him bring it up."  The complaining witness further testified that, once they were down in the basement, defendant placed her on top of a "flat ironing table" and started "touching [her] uncomfortably," such that he "started moving his hands towards * * * [her] thighs and down and he pulled [her] pants down a little bit * * *."  She added that "he was kissing [her] legs."

The complaining witness also testified as to an event that allegedly occurred when she was seven-years-old.  She stated that defendant came into a room on the first floor of the 44 Alton Street house where she was playing on her tablet.  According to the complaining witness, when defendant entered the room, she pretended to be asleep.  She testified that, after defendant tried to wake her up from

her pretended sleep, he took off her pants and underwear and performed oral sex on her.

The complaining witness testified to a third alleged incident of molestation that occurred when she was eight-years-old. According to the complaining witness, while she was in the basement with defendant, he pulled her pants down. She further testified that he then "pulled his pants down and start[ed] playing with his private spot in front of [her]."

The complaining witness also testified that defendant had touched her more than the three times about which she had already testified.

### 3. The Testimony of Doctor Amy Goldberg

Doctor Goldberg testified that she was employed as a pediatrician at Hasbro Children's Hospital with a subspecialty in the area of child abuse and neglect. She was qualified as an expert at trial. Doctor Goldberg testified that, in July of 2019, at the Aubin Center of the Hasbro Children's Hospital, she evaluated the complaining witness, who was then ten-years-old. Doctor Goldberg indicated that, before interviewing the complaining witness, she first took a history from Ms. Mora. She testified without objection that, as a result of being briefed about the pertinent history, she learned the following: (1) Ms. Mora first became aware of the disclosure of the abuse when she and the complaining witness were driving in the car together; and (2) the complaining witness was four-years-old at the time of the first alleged

sexual abuse. Doctor Goldberg also testified that she spoke with the complaining witness before undertaking her physical examination. Among other disclosures relative to the specifics of the alleged abuse, Dr. Goldberg testified that the complaining witness identified defendant as the perpetrator and stated that the alleged abuse took place from the time when she was four-years-old until she was eight-years-old.

Doctor Goldberg testified that, after obtaining the relevant history from both Ms. Mora and the complaining witness, she conducted a physical examination of the complaining witness. She stated that "[e]verything was normal on her physical examination." Doctor Goldberg additionally confirmed that she was aware of the "information that was obtained at the forensic interview." Importantly, the following exchange next occurred:

> "[PROSECUTOR]: Doctor, based on your training and experience, the physical exam that was done on [the complaining witness], the history that was taken from both mom and [the complaining witness], the information obtained at the forensic interview, do you have an opinion to a reasonable degree of medical certainty as to whether or not [the complaining witness's] disclosure is consistent with child sexual abuse?
>
> "[DEFENSE COUNSEL]: Objection.
>
> "* * *
>
> "THE COURT: Overruled. You may answer.
>
> "[THE WITNESS]: Yes.

"[PROSECUTOR]: And what is that opinion?

"[THE WITNESS]: That she was sexually abused.

"[PROSECUTOR]: It was consistent?

"[THE WITNESS]: That it's consistent with child sexual abuse."

On cross-examination, Dr. Goldberg confirmed that there had been no physical evidence of sexual abuse and that her opinion was based on "all of the information that [she] had from the evaluation" which she had performed—namely, the information obtained from Ms. Mora and the complaining witness.

## C

### The Subsequent Travel of the Case

At the close of the prosecution's case, defense counsel moved for a judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure as to one of the counts of second-degree child molestation (Count 3), contending that there was no evidence of the "hand to thigh [contact] that is charged in the indictment." The trial justice granted the motion for judgment of acquittal as to Count 3.

After the parties presented their closing arguments, the jury began deliberations on September 28, 2022. Later that same day, the jury found defendant guilty on the remaining counts—*viz.*, one count of first-degree child molestation

(Count 1) and on one count of second-degree child molestation (Count 2). Notably, counsel for defendant did not file a motion for a new trial.

On January 11, 2023, defendant's trial counsel filed a motion to withdraw his appearance, which the trial justice granted. The court referred defendant to the Office of the Public Defender for representation at the sentencing hearing. On October 30, 2023, defendant was sentenced to: a sixty-year sentence, with twenty-five years to be served, on the first-degree child molestation count (Count 1); and a concurrent sentence of twenty-five years on the second-degree child molestation count (Count 2).

A judgment of conviction and commitment was entered on November 22, 2023. The defendant filed a premature but valid notice of appeal on November 16, 2023.

## II

## Issue on Appeal

The defendant argues on appeal that the trial justice committed reversible error when he allowed the state's medical expert, Dr. Goldberg, to present "bolstering testimony" in that said expert testified that she "believed the complaining witness's allegations to be true in a case that rested entirely on the girl's credibility."

## III

## Standard of Review

This Court has stated that "[w]hen reviewing the decision of a trial justice to admit certain evidence, * * * questions as to the admissibility *vel non* of evidence are confided to the sound discretion of the trial justice." *State v. Pitts*, 990 A.2d 185, 189 (R.I. 2010) (internal quotation marks and deletion omitted). Accordingly, "[w]e will not overturn the ruling of a trial justice with respect to an evidentiary issue unless it constitutes an abuse of the justice's discretion and prejudices the complaining party." *Id.* (internal quotation marks omitted). Additionally, we have further made it clear that "[w]e are disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision." *Id.* at 189-90 (internal quotation marks and deletion omitted).

## IV

## Analysis

On appeal, defendant contends that the trial justice erred in allowing Dr. Goldberg to testify that the complaining witness had been sexually abused even though her expert opinion was based only on statements made by the complaining witness and her mother. The defendant further argues that this testimony "far exceeded the scope of a permissible expert opinion and crossed well into bolstering territory." It is defendant's further contention that the prejudicial nature of this

- 11 -

testimony was particularly harmful because this case "rested entirely on the [complaining witness's] testimony."

Among other arguments, the state emphasizes that defendant did not properly object to the questions posed by the state and that he did not move to strike Dr. Goldberg's answers to those questions. Specifically, the state contends that defendant failed to preserve his objection to Dr. Goldberg's testimony for appellate review. We agree.

This Court has held that a "trial justice's rulings on motions *in limine* are preliminary in nature." *State v. Colon*, 198 A.3d 1249, 1255 (R.I. 2019); *see State v. Buchanan*, 81 A.3d 1119, 1126 (R.I. 2014) (noting that "this Court repeatedly has stated that the grant or denial of a motion *in limine* is by no means a final ruling on the admissibility of the evidence addressed in the motion"). It follows that "an *in limine* ruling is not final and a trial justice is vested with broad discretion to reconsider the ruling as the trial unfolds." *Buchanan*, 81 A.3d at 1126. As such, it is "incumbent upon counsel to raise timely and appropriate evidentiary objections throughout the trial in order to preserve the issues for appeal." *Colon*, 198 A.3d at 1255 (internal quotation marks omitted).

Pursuant to this Court's raise or waive rule, "a litigant must make a timely and appropriate objection during the lower court proceedings before this Court will indulge the issue on appeal." *State v. Grant*, 840 A.2d 541, 546 (R.I. 2004). This

Court has further cautioned that a "general objection does not suffice to preserve an issue for appellate review; rather, assignments of error must be alleged with sufficient particularity so it will call the trial justice's attention to the basis of the objection." *Id.* at 546-47; *see Colon*, 198 A.3d at 1258 ("[W]hen an evidentiary issue is raised on appeal, Rule 103(a)(1) of the Rhode Island Rules of Evidence explicitly provides that a finding of error must be based upon a timely objection or motion to strike of record, stating the specific ground of objection, if the specific ground was not apparent from the context.") (internal quotation marks, deletion, and emphasis omitted).

The admissibility of Dr. Goldberg's testimony was first addressed when the state filed its motion *in limine* to permit Dr. Goldberg to testify pursuant to Rule 803(4); but the trial justice did not rule on that issue at the *in limine* stage. When the trial justice later revisited the issue at a mid-trial hearing, it was then that counsel for defendant argued that Dr. Goldberg was being "called to bolster the testimony of the witnesses." The trial justice stated that he was going to "wait to see what the doctor will actually testify to," which indicates to this Court that the trial justice's attitude towards the testimony that Dr. Goldberg would provide was tentative in nature and that defendant still had the responsibility to lodge an objection to the specific aspects of that testimony in order to preserve the issue for appeal. *See State v. Ciresi*, 45 A.3d 1201, 1212 (R.I. 2012).

At trial, defendant's only objection as to the admission of this testimonial evidence was to the state's question: "Doctor, based on your training and experience, the physical exam that was done on [the complaining witness], the history that was taken from both mom and [the complaining witness], the information obtained at the forensic interview, do you have an opinion to a reasonable degree of medical certainty as to whether or not [the complaining witness's] disclosure is consistent with child sexual abuse?" The defendant failed to object to the two subsequent questions, which constitute the basis for this appeal—*viz.*, what was Dr. Goldberg's expert medical opinion and whether that opinion was consistent with child abuse.[2] Simply put, defense counsel objected only to the question as to whether Dr. Goldberg *had* an opinion, not the substance of her expert opinion.

Additionally, at the time when he did voice an objection, defendant did not voice a specific basis for his objection. We further reject any argument that the context of the examination provided the basis for the objection. As we have noted, defense counsel solely objected to the question about whether Dr. Goldberg *had* an opinion to a reasonable degree of medical certainty as to whether the complaining witness's disclosure was consistent with child sexual abuse. *See Pollard v. Acer Group*, 870 A.2d 429, 433 (R.I. 2005) ("The Supreme Court of Rhode Island has been steadfast in its adherence to the general proposition that no issues may be raised

---

[2] *See State v. Colon*, 198 A.3d 1249, 1255 (R.I. 2019), as quoted *supra*.

- 14 -

on appeal unless such issues were presented to the trial court in such a posture as to alert the trial justice to the question being raised.") (quoting Joseph R. Weisberger, *Rhode Island Appellate Practice*, Rule 16.5 at 89 (1993)); *see also State v. Diefenderfer*, 970 A.2d 12, 30 (R.I. 2009) ("It should be borne in mind that, in order to satisfy the strictures of our 'raise-or-waive' rule, an evidentiary objection must be 'sufficiently focused so as to call the trial justice's attention to the basis for said objection.'") (deletion omitted) (quoting *State v. Warren*, 624 A.2d 841, 842 (R.I. 1993)). It therefore cannot fairly be said that it was contextually clear that defense counsel was objecting on the basis of bolstering. *See State v. Adefusika*, 989 A.2d 467, 479 (R.I. 2010) (noting that an evidentiary objection "must be sufficiently focused" and articulated with reasonable specificity) (internal quotation marks omitted).

Finally, defense counsel similarly failed to move to strike Dr. Goldberg's answers; he also did not request a cautionary instruction relative to Dr. Goldberg's testimony. *See State v. Ahmadjian*, 438 A.2d 1070, 1077 (R.I. 1981) (noting that the defendants' failure to move to strike certain testimony "was a decision on their part not to take advantage of the long-observed practice in this state of eliminating from the record testimony that is improper, erroneous, or prejudicial by means of a motion to strike"); *see also State v. Lyons*, 725 A.2d 271, 276 (R.I. 1999) (holding that, because the defendant failed to object specifically to certain testimony at the trial

- 15 -

level and did not move to strike the answer and did not request a cautionary instruction or a mistrial, the issue was waived).

Accordingly, for the reasons discussed herein, the evidentiary issue now before this Court has not been preserved for appellate review, and we therefore deem it to have been waived.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jose Lantigua. |
| **Case Number** | No. 2024-14-C.A. (P1/20-1021A) |
| **Date Opinion Filed** | July 3, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Stephen P. Nugent |
| **Attorney(s) on Appeal** | For State: Devon Flanagan Hogan Department of Attorney General |
| | For Respondent: Angela M. Yingling Rhode Island Public Defender |